AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Tennessee

United States District Court
Southern District of Texas
FILED

JUN 0 5 2015

Clerk of Court

| | |
|---|---|
| United States of America<br>v.<br>Juan Carlos Flores<br>~~Morris Carpenter, and~~<br>~~Cordell Waltmon~~<br><br>*Defendant(s)* | Case No. 15-20142-JTF/dkv<br>FILED UNDER SEAL<br><br>M-15-0907-M-01 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __05/01/2014 - 05/21/15__ in the county of __Shelby__ in the __Western__ District of __Tennessee__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | that is, they did unlawfully, knowingly and intentionally conspire, combine, confederate and agree together and with other persons both known and unknown, to unlawfully, knowingly, and intentionally possess with the intent to distribute and to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance as classified by Title 21, United States Code, Section 812. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

*Complainant's signature*

FBI Special Agent Matthew J. Ross
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __05/22/2015__

s/Charmiane G. Claxton
*Judge's signature*

City and state: __Memphis, Tennessee__    U.S. Magistrate Judge Charmiane G. Claxton
*Printed name and title*

# AFFIDAVIT

## FILED UNDER SEAL

I, Matthew J. Ross, being duly sworn, depose and state the following:

### I.

### INTRODUCTION

I am a Special Agent with the Federal Bureau of Investigation (hereinafter referred to as the "FBI"), United States Department of Justice, and have been so employed for approximately thirteen years and seven months. I am currently assigned to the FBI Memphis Division's Safe Streets Task Force and am responsible for investigating crimes related to organized crime and drug trafficking organizations.

As an FBI Agent, I am authorized to investigate crimes involving controlled substances pursuant to Title 21, United States Code, § 846 and § 841(a)(1), as well as money laundering crimes pursuant to Title 18, United States Code, § 1956 and § 1957.

During my employment with the FBI, I received training and participated in numerous investigations involving drug trafficking and money laundering. Through my experience in narcotics investigations, I have become familiar with the operation of illegal drug trafficking organizations and the methods used to distribute narcotics and launder drug proceeds. As part of the training for my current position, I received four months of general agent training at the FBI Academy in Quantico, Virginia, as well as other in-service training classes received after graduation.

I make this affidavit in support of a complaint and arrest warrant charging **JUAN**

1

**CARLOS FLORES, CORDELL WUTHRICH,** and **HORRIS CARPENTER** with a violation of Title 21, United States Code § 846 (conspiracy to distribute a controlled substance).

The information in this affidavit is based upon my personal knowledge of the events set forth herein, and information provided to me by other law enforcement personnel, cooperating individuals and other sources of information. Due to this affidavit being submitted for the limited purpose of obtaining a complaint and arrest warrant, I have not included each and every fact known to me or other law enforcement personnel concerning this investigation, but set forth only those facts that I believe are necessary to establish probable cause.

## II.

### SUMMARY OF THE INVESTIGATION

This investigation concerns illegal drug sales and the laundering of drug proceeds by multiple individuals in the Memphis, Tennessee area. During the investigation it was revealed that **HORRIS CARPENTER (a/k/a "Twin")** (hereinafter referred to as **"CARPENTER"**) was the cell head of a drug trafficking organization (hereinafter referred to as "DTO") based in Memphis, Tennessee.

From May 2014 to March 2015, investigators with the FBI observed **JUAN CARLOS FLORES** (hereinafter referred to as **"FLORES"**) meet with **Horris** on six different occasions in Memphis, Tennessee. Each time **FLORES** was in Memphis, Tennessee to meet with **CARPENTER**, investigators observed him driving a maroon Ford F-150 bearing Arkansas license plate 740TNE. This vehicle was registered to **CORDELL WUTHRICH** (hereinafter

2

referred to as "**WUTHRICH**") at P.O. Box 10, Violet Hill, Arkansas. After one of the meetings in late September 2014, investigators conducted surveillance on **FLORES** and observed him drive from **CARPENTER's** residence to a residence located at 213 Shadow Gate Road, Violet Hill, Arkansas 72584. During another of these meetings in December 2014, investigators observed **WUTHRICH** with **FLORES** in Memphis, Tennessee.

On March 25, 2015, the Honorable John T. Fowlkes, Jr., United States District Court for the Western District of Tennessee, authorized the interception of wire and electronic communications of **CARPENTER's** telephone number (901) 649-0291 (hereinafter referred to as TT #1). Investigators with the FBI began monitoring TT #1 on March 30, 2015. On April 28, 2015, the Honorable John T. Fowlkes, Jr., United States District Court for the Western District of Tennessee, authorized the continued interception of wire and electronic communications of TT #1. Interceptions are ongoing and are set to expire on May 26, 2015. During the course of these interceptions, investigators intercepted and reviewed drug-trafficking conversations and SMS Text messages between **FLORES, CARPENTER,** and other co-conspirators. These conversations and SMS Text messages concerned the distribution of cocaine and the laundering of drug proceeds in the Memphis, Tennessee area.

On April 2, 2015, investigators conducted surveillance in the area of **Horris's** residence. Investigators observed **WUTHRICH** leave **CARPENTER's** residence at 3545 Lakeview Road, Memphis, Tennessee 38116 in the same Ford F-150 used previously by **FLORES** and travel northbound on Interstate 55 into Arkansas and then northbound on Arkansas Highway 63 toward

3

Jonesboro, Arkansas. This was the same route investigators previously observed **FLORES** take in the same vehicle to 213 Shadow Gate Road, Violet Hill, Arkansas 72584.

While traveling through Jonesboro, Arkansas, **WUTHRICH** was stopped by the Jonesboro Police Department for a traffic violation. After getting consent from **WUTHRICH** to search his truck, officers discovered approximately $210,000 in United States currency hidden in a tractor tire lying in the bed of the truck. **WUTHCRICH** claimed to have no knowledge of the currency and claimed the tire did not belong to him. The Jonesboro Police Department did not arrest **WUTRHCIH** and eventually released him with his truck. Based on my experience in narcotics investigations, I know that $210,000 is currently the approximate cost of six kilograms of cocaine. I also know that drug dealers frequently conceal the proceeds of their narcotics in hollow spaces on vehicles to include inside vehicle tires. Based on my experience in narcotics investigations and the facts of the case, I believe **WUTRHICH** picked up drug proceeds from **Horris's** residence and attempted to deliver them to a stash house located at 213 on Shadow Gate Road, Violet Hill, Arkansas 72584.

On April 2, 2015, at approximately 7:51 p.m., **FLORES**, called **CARPENTER** on TT #1 and asked, "I said did my boy (**WUTHRICH**) ever get out of there?" **CARPENTER** responded, "Oh yeah, yeah, yeah, yeah. We got him on out of here." **FLORES** then stated, "I've been trying to call him and he don't answer." **CARPENTER** then replied, "Ok, he got out of here on time." **FLORES** then said, "Yeah, I'll call him here in a little bit. His phone's off." After this call, toll records on **FLORES's** telephone revealed **FLORES** continued to attempt to call **WUTHRICH**. Finally, at approximately 11:41 p.m., **FLORES** received a call from a telephone

4

number that investigators later learned was used by **WUTHRICH**. Investigators, based on the facts and circumstances of the case, suspect that **WUTHRICH** activated a new telephone number after being released by law enforcement following the aforementioned traffic stop and seizure to call **FLORES**. Based on my experience in narcotics investigations, I know that individuals involved in drug trafficking frequently change their telephones after encounters with law enforcement.

On April 14, 2015, at approximately 3:02 p.m., **CARPENTER**, using TT #1, called **FLORES**. During the call, **FLORES** stated, "I need you to, uh, uh, can you, can you put that, that receipt together tonight because I need it tonight man." **CARPENTER** responded, "I'm going to be waiting on you. I'll be at home." **FLORES** then said, "Give me till ten o'clock, and uh, my boy (**WUTHRICH**) will be there at ten o'clock. But, uh, just please call me tonight. I need to get a hold of you, because he'll be there." At approximately 11:47 p.m., **FLORES** called **CARPENTER** on TT #1. During the call, **FLORES** stated, "It will be another hour before he (**WUTHRICH**) get there. You want him to go right now or in the morning? I will rather get it over with right now. However, you will have to wait till into the morning." **CARPENTER** responded, "Yea." The next morning, investigators observed **WUTHRICH** arrive at **CARPENTER's** residence in a white 2007 Chevrolet flat bed truck. Based on my experience in narcotics investigations and the facts of the case, I believe **FLORES** sent **WUTHRICH** to **CARPENTER's** residence to pick up more drug proceeds. This time **WUTHRICH** was in a different vehicle.

5

On April 19, 2015, **FLORES** called **CARPENTER** on TT #1. During the call, **FLORES** stated, "I'm going to be seeing you there next week. What about you say next week?" **CARPENTER** replied, "Ok." **FLORES** then stated, "But, um, you got to see if you can fly man. I tell you, that ticket killed everybody man, but, that, you know, that last ticket put me in a hole." **CARPENTER** then replied, "Yeah." Based on my experience in narcotics investigations and the facts of the case, I believe **FLORES** told **CARPENTER** he plans to bring more cocaine to Memphis the following week. I further believe **FLORES** expressed concern about the money being seized from **WUTHRICH** on April 2, 2015 and asks **CARPENTER** to work quickly to help him make up for the loss. I know that drug dealers typically refer to drug proceeds as a "Ticket". **FLORES** further expressed that he was "in a hole", meaning he lost that money and still owes his suppliers of cocaine for the difference.

On April 26, 2015, **FLORES**, called **CARPENTER** on TT #1. During the call, **FLORES** asked, "How you doing man?" **CARPENTER** replied, "I'm good." **FLORES** then stated, Hey, I don't know if, if it's good dope. I'm gonna call you back, um." **CARPENTER** responded, "Yeah." Later in the same conversation, **FLORES** stated, I'll see you in a couple of days." **CARPENTER** replied, "Alright, cool." Based on my experience in narcotics investigations and the facts of the case, I believe **FLORES** told **CARPENTER** he was going to check the quality of the cocaine and let **CARPENTER** know the results. **FLORES** further told **CARPENTER** he planned to bring the cocaine in a couple of days to Memphis.

On May 2, 2015, **FLORES** called **CARPENTER** on TT #1. During the call, **FLORES** and **CARPENTER** discussed an upcoming boxing match. At the end of the call, **FLORES**

asked **CARPENTER**, "Hey, you ah, you want some of them tippie puppies or no?" **CARPENTER** responded, "Yeah, man, yeah, ah, hold on, let me, hold on one second, hold on one second, I'm a call him." **CARPENTER** can then be heard talking to someone in the background, "Let me use that phone." The call then abruptly ends. Through toll analysis, investigators learned that **CARPENTER** called **FLORES** back on an associate's telephone number and talked for one minute and 38 seconds. Based on my experience in narcotics investigations and the facts of the case, I believe **FLORES** called **CARPENTER** on TT #1 and asked if he was still interested in buying more cocaine. **CARPENTER** then utilized one of his associate's telephone numbers to talk with **FLORES** about the cocaine. **CARPENTER** did this in an effort to hide his conversations from law enforcement.

On May 21, 2015, **WUTHRICH** was observed by investigators leaving the stash house at 213 Shadow Gate Road, Violet Hill, Arkansas 72584 in the same white 2007 Chevrolet flat bed truck seen recently at **CARPENTER's** residence. Investigators observed **WUTHRICH** travel east toward Tennessee. Approximately 45 miles from Jonesboro, Arkansas, **WUTHRICH** was stopped by an Arkansas State Police officer for a traffic violation. During the stop, **WUTHRICH** became overly nervous and the officer ran a narcotics canine on the truck. The drug canine indicated for narcotics on the driver's side of the bed. The officer then drilled a small hole into the bed of the truck and saw several bundles stored in a hidden compartment. The officer then towed the vehicle to a nearby garage where the compartment was opened. Inside the compartment, the officer found approximately 28 cellophane wrapped packages. The officer opened one of the packages and found a white powdery substance that field tested positive for

cocaine. The packages weighed approximately 28 kilograms. Based on my experience in narcotics investigations and the facts of the case detailed above, I believe **WUTHRICH**, at **FLORES'S** direction, planned to deliver at least some of the cocaine found in **WUTHRICH's** truck to **CARPENTER** at his residence.

### III.

### CONCLUSION

Based on my training, experience, and the foregoing observations and facts, I believe that there is probable cause to believe that **JUAN CARLOS FLORES, CORDELL WUTHRICH,** and **HORRIS CARPENTER** did in fact conspire to possess with the intent to distribute and to distribute a controlled substance, that is, at least 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, all in violation of Title 21, United States Code § 846.

WHEREFORE, your affiant requests that a complaint and arrest warrant be issued for **JUAN CARLOS FLORES, CORDELL WUTHRICH,** and **HORRIS CARPENTER** for violation of Title 21, United States Code § 846 (conspiracy to distribute a controlled substance).

Matthew J. Ross, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before
me this 22nd day of May, 2015

s/Charmiane G. Claxton
United States Magistrate Judge

8